UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

JOHN STEPHEN BERRY,        )
                           )
       *Plaintiff*         )
                           )
v.                         )   No. 2:10-cv-108-DBH
                           )
MICHAEL J. ASTRUE,         )
**Commissioner of Social Security,**  )
                           )
       *Defendant*         )

## *REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") appeal raises the question of whether the commissioner supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. I recommend that the decision of the commissioner be affirmed.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520); *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff had severe impairments of coronary artery disease and diabetes mellitus, Finding 3, Record at 12; that he did not have an impairment or combination of impairments that met or medically equaled the criteria of any of the impairments listed in Appendix 1 to Subpart P, 20 C.F.R. § 404 (the "Listings"), Finding 4, *id.*; that he had the residual functional capacity ("RFC") to perform

---

[1] This action is properly brought under 42 U.S.C. § 405(g). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on March 15, 2011, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

sedentary work as defined in 20 C.F.R. § 404.1567(a) with no climbing of ladders, ropes, or scaffolds, no crawling, no exposure to temperature extremes, and no irregular or physically demanding terrain/environments, Finding 5, *id*. at 13; that, considering his age (43 years old, defined as a younger individual, on the alleged disability onset date), education (at least high school), work experience (transferability of job skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, Findings 7-10, *id*. at 16; and that he, therefore, was not disabled from January 20, 2007 (his alleged disability onset date), through the date of the decision (October 13, 2009), Finding 11, *id*. at 17.[2] The Decision Review Board declined to disturb the decision, *see id*. at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.450(a); *Dupuis v. Secretary of Health & Human Servs*., 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 405(g); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform

---

[2] The plaintiff is insured for purposes of SSD benefits through December 31, 2011. *See* Finding 1, Record at 11. The administrative law judge mistakenly referred to the plaintiff's originally claimed onset date of disability, January 20, 2007, rather than his amended date of July 6, 2007. *See id*. at 9. However, nothing turns on the discrepancy.

2

work other than his past relevant work. 20 C.F.R. § 405.101 (incorporating 20 C.F.R. § 404.1520(g)); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

The plaintiff seeks reversal and remand on three bases: that the administrative law judge (i) failed to give appropriate weight to the written medical opinion of his primary care physician, Gary L. Green, M.D., (ii) failed to give appropriate weight to certain testimony of a vocational expert present at his hearing, and (iii) erred in her determination of the plaintiff's RFC and the calculation of the number of corresponding jobs available in the national economy. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (Docket No. 8) at 1-2. His second and third points of error hinge on the first: he faults the administrative law judge for failing to credit vocational testimony predicated on Dr. Green's opinion and for adopting an RFC less restrictive than that suggested by Dr. Green. *See id.* at 3-4. I find no reversible error in the administrative law judge's rejection of the Green opinion and, hence, recommend that the decision be affirmed.

The plaintiff first saw Dr. Green, his primary care physician, in 1991, and continued to see him in that capacity as of his hearing date of September 14, 2009. *See* Record at 32. The work restriction opinion on which the plaintiff relies, dated September 5, 2003, *see id.* at 218, was rendered by Dr. Green in the context of litigation the plaintiff initiated against his former employer, the United States Postal Service ("USPS"), in connection with his discharge following a work-related injury, *see id.* at 31-33.

The plaintiff had enlisted in the military following his graduation from high school in 1981, but had received an honorable discharge in 1983, after he was diagnosed with diabetes. *See id*. 28-29. Thereafter, he had worked without incident for the USPS until 1992, when, while engaged in delivering the mail, he was struck by a bicyclist, fell, broke his hip, injured his right shoulder, and received a concussion. *See id*. at 29-30, 204. He testified that, as a complication of his diabetes, his recovery from his accident was slow, and he was fired by the USPS for failure to return to work quickly enough. *See id*. at 30-31. In ensuing litigation, he reached a settlement with the USPS entailing the creation of a job for him accommodating work restrictions initially set forth by Dr. Green in 1994. *See id*. at 31-32, 204. Thereafter, the USPS sought periodic updates from Dr. Green concerning the plaintiff's medical restrictions. *See id*. at 32-33. The letter in question, penned on September 5, 2003, was written in response to one of those requests. *See id*. However, Dr. Green never altered the plaintiff's work restrictions after first setting them forth in 1994. *See id*.

In his September 5, 2003, letter, Dr. Green stated that the plaintiff's medical restrictions on account of Type I diabetes mellitus and chronic right rotator cuff tendonitis were as follows:

1. No lifting greater than 10 pounds with the right upper extremity on an intermediate speed as defined as more than 30-50 times per hour.

2. No repetitive use with the right upper extremity.

3. No pushing or pulling with the right upper extremity.

4. No use of the right upper extremity above the shoulder level.

5. No hand casing with the right upper extremity.

6. No keying with the right upper extremity.

7. If casing with the left hand, he shall case no more than two hours continuously with the left upper extremity without a break of 10

> minutes. He must be able to stretch every hour for 3-5 minutes as deemed necessary.
>
> 8. The patient must work day shifts with breaks every 4 hours to allow for blood sugar testing, eating, and insulin therapy. Overtime is discouraged but not absolutely prohibited.
>
> 9. The patient must be allowed to have a snack at his work station and to be able to consume this if he feels he is developing a hypoglycemic reaction.
>
> 10. The patient must work in a stress free environment to prevent swings in his blood sugars.

*Id*. at 218. The plaintiff continued to work at the USPS under Dr. Green's work restrictions until June 2007, Dr. Green having advised that he retire in view of the problems he was then having, including coronary artery disease with chest pains and difficulty walking because of pain and peripheral neuropathy in his feet. *See id*. at 43-46, 174.

The plaintiff sought disability retirement from the federal government and an increase to 100 percent in his disability rating from the Veterans Administration ("VA"). *See id*. at 46, 52. As a condition of applying for federal disability retirement, he was required to apply for SSD. *See id*. at 46. Dr. Green wrote a letter in support of the plaintiff's medical retirement indicating that his medical conditions made it impossible for him to function in a position offered as a city carrier and that his medical conditions were unlikely to improve. *See id*. at 45, 269. The plaintiff was informed by notice dated November 26, 2007, that he had been granted disability retirement, and, by a decision dated February 27, 2009, that he had been granted a 100 percent disability rating from the VA effective July 21, 2007. *See id*. at 410, 462-68.

In addition to Dr. Green's work restrictions, the record before the administrative law judge contained an RFC opinion of Disability Determination Services ("DDS") nonexamining consultant Paul Stucki, M.D., dated August 23, 2007, finding the plaintiff capable of lifting 20

pounds occasionally and 10 pounds frequently, standing and/or walking, with normal breaks, for at least four hours in an eight-hour workday, with an emphasis on "NL [normal] breaks[,]" and sitting for about six hours in an eight-hour workday, with no climbing of ladders, ropes, or scaffolds and no crawling, only occasional climbing of ramps or stairs, balancing, stooping, kneeling, or crouching, a need to avoid constant and/or forceful overhead reaching or work, and a need to avoid temperature extremes, poor ventilation, and irregular or otherwise physically demanding terrain or environment. *See id*. at 335-38.

Although Dr. Stucki made allowance for a restriction with respect to overhead reaching, he noted that he had found little medical evidence of record with respect to the plaintiff's alleged bilateral shoulder rotator cuff problem and no specific comments on that condition in recent primary care physician or other examinations. *See id*. at 337, 339.

The administrative law judge found no severe upper extremity impairment, stating that the evidence did not demonstrate that the plaintiff had received any treatment for his right shoulder since the alleged onset date of disability and that, although the left shoulder had been reported symptomatic in June 2008, the plaintiff was noted to be "recovering nicely" in January 2009 from surgery performed on that shoulder. *See id*. at 12. She also noted that the plaintiff had reported activities such as yard work and rebounding basketballs for his son, indicating that his shoulder impairments had not caused more than a minimal limitation or lasted more than 12 months. *See id*.

The administrative law judge considered but rejected the Green work restrictions, stating:

The [plaintiff] relies on a medical opinion offered by Dr. Green, which was rendered in 2003, and which related only to the [plaintiff's] upper extremity issues at the time, and diabetes. As discussed above, the undersigned has found the shoulder injury to be a non-severe impairment, since the [plaintiff] has not sought treatment for it[] since the alleged onset date. The restrictions imposed by Dr. Green in 2003 have been accorded no weight, as they are not supported by, or

6

consistent with, the treatment or activities since the alleged onset date. Since the alleged onset date, there have been no reports of hyper or hypoglycemic episodes, which would warrant such restrictions.

*Id*. at 14 (citation omitted).

The administrative law judge gave some weight to the Stucki opinion insofar as it related to lower extremity restrictions caused by the plaintiff's peripheral neuropathy, but no weight insofar as it set forth upper extremity limitations, in light of the plaintiff's ability to rebound basketballs for his son and other activities revealing an ability to use his upper extremities consistent with her RFC determination, his lack of any treatment for his right shoulder subsequent to his alleged onset date of disability, and a less than 12-month limitation on his left shoulder. *See id*. at 15.

Dr. Green's 2003 work restrictions fairly can be characterized as a so-called "medical opinion." *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").

Medical opinions are entitled to consideration based on six enumerated factors: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability – *i.e*., adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other factors highlighted by the claimant or others. *Id*. § 404.1527(d)(2)-(6). A medical opinion by a treating source such as Dr. Green is given "controlling weight" when it is well supported by medically acceptable clinical and laboratory

diagnostic techniques and is not inconsistent with other substantial evidence in the case record. *See id*. § 404.1527(d)(2); Social Security Ruling 96-2p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2010) ("SSR 96-2p"), at 111. When such an opinion is not given controlling weight, it is nonetheless evaluated pursuant to the factors enumerated in section 404.1527(d)(2)-(6). *See id*. § 404.1527(d)(2). The fact that a medical opinion is not entitled to controlling weight does not mean that it should be rejected. *See* SSR 96-2p at 114. "Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927." *Id*. The commissioner must "always give good reasons in [his] notice of determination or decision for the weight [he] give[s] your treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

The plaintiff argues that the administrative law judge wrongly gave the Green opinion no weight, as opposed to controlling or at least significant weight, given that Dr. Green had personally treated him for more than 25 years, had overseen and directed the entire course of his medical care, including referrals to and consultations with various specialists, had been entrusted with the task of drawing up work restrictions in settlement of the plaintiff's litigation against the USPS, and had opined in 2007 that he should be medically retired. *See* Statement of Errors at 2-3. He complains that the administrative law judge seemingly and erroneously determined that lack of post-employment symptomatology indicated that his underlying medical conditions had resolved or had been overstated when:

1. That determination was directly contradicted by Dr. Green's 2007 statement that the plaintiff's medical conditions would not improve and that he should be medically retired; and

2. Any lack of symptoms in an essentially stress-free home environment was as consistent with a finding that the plaintiff needed to avoid workplace stress as with a finding questioning the severity of his impairments. *See id*. at 3.

I find no reversible error. The plaintiff does not challenge the administrative law judge's factual finding that there was no treatment for his right shoulder subsequent to his alleged onset date of disability, and, on independent review of the complete record, I find no indication of any such treatment, or even of any complaints of right shoulder pain or limitation, during that time period. The administrative law judge reasonably concluded, in the circumstances, that the record supplied no basis for adoption of any of Dr. Green's first seven work restrictions, all of which related to the plaintiff's earlier diagnosis of chronic right rotator cuff tendonitis. *See id*. at 218.[3]

Nor do I find material error in the rejection of Dr. Green's remaining three work restrictions relating to the plaintiff's diabetes. In response to a hypothetical question containing each of Dr. Green's 10 work restrictions, the vocational expert present at the plaintiff's hearing testified that work would be eliminated because "I don't know of any environment that's stress-free." *Id*. at 72.[4]

---

[3] Dr. Green assessed no restrictions attributable to a left shoulder impairment. *See* Record at 218. However, to the extent that the plaintiff complains of the absence of any restrictions related to his left shoulder, I find no error. The administrative law judge noted that the plaintiff began to complain of left shoulder symptoms in June 2008 and that Dr. Green indicated in January 2009 that the plaintiff had recently undergone left shoulder surgery from which he was "recovering nicely[.]" *Id*. at 12, 428, 439. There are no indications of further complaints regarding the plaintiff's left shoulder in notes of visits with Dr. Green in April and July 2009. *See id*. at 430, 435. The administrative law judge thus supportably concluded that any left shoulder impairment did not impose more than minimal restrictions for at least 12 months. *See id*. at 15; *see also* 20 C.F.R. § 404.1509 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months.").

[4] The vocational expert also testified that the restriction against use of the right upper extremity would impact a person's ability to complete work tasks during the course of the day. *See* Record at 71-72. She did not indicate that the remaining restrictions, including the need for breaks every four hours to allow for blood sugar testing, eating, and insulin therapy and the need to allow for the consumption of a snack at the plaintiff's work station if needed to avoid a hypoglycemic reaction, would have any impact on the availability of work in the national economy. *See id.* At oral argument, the plaintiff's counsel blamed the administrative law judge for any failure to elicit vocational expert testimony as to the impact of particular restrictions set forth by Dr. Green because she had interceded as he
*(continued on next page)*

The plaintiff did testify that nerves and anxiety affected his blood sugar and that he had to eat more, or sometimes adjust his insulin, to avoid a reaction, sometimes without success. *See id*. at 39. He testified that, on three or four occasions between 2000 and his departure from his job in 2007, he had collapsed at work and been taken from the post office by an ambulance or fire truck. *See id*. at 39, 41. Nonetheless, as the administrative law judge noted, *see id*. at 14, the record contains no medical evidence corroborating that the plaintiff had hyperglycemic or hypoglycemic episodes at any time after his alleged onset date of disability. In addition, I find no evidence of record, even pertaining to the period during which the plaintiff continued to be employed by the USPS, indicating that he suffered a hypoglycemic or hyperglycemic reaction at work, whether or not attributable to work stress.[5] Nor does Dr. Green speak in his progress notes of a need for stress avoidance. In a letter dated November 6, 2007, in describing the plaintiff's diabetes mellitus, Dr. Green noted that the plaintiff's control on home glucose monitoring had been average and that complications of the disease had included diabetic retinopathy and diabetic neuropathy. *See id*. at 373. He did not describe episodes of hypoglycemia or hyperglycemia. *See id*.

While it is possible, as the plaintiff suggests, to attribute his lack of symptomatology post-employment, consistent with the Green work restrictions, to the removal of work-related stress, the administrative law judge equally reasonably could have found that the lack of such

---

was asking his questions and had asked them instead, the hearing having run over its allotted time. *See id*. at 70-71. However, at the conclusion of the vocational expert's testimony, the administrative law judge asked if the plaintiff's counsel had anything further, and he said he did not. *See id*. at 72.

[5] While the plaintiff stated that he had always taken care of himself to the best of his ability, *see, e.g.*, Record at 205, the administrative law judge supportably found that Dr. Green had questioned his compliance with diabetes management, including diet and blood sugar levels, *see id*. at 15, 378, 411, 444.

symptoms undercut the need for the severe restriction of a stress-free environment, particularly in view of the plaintiff's level of activity post-employment.[6]

As counsel for the commissioner noted at oral argument, Dr. Green's 2007 statement in support of the plaintiff's medical retirement did not directly contradict the administrative law judge's findings. Dr. Green specifically deemed the plaintiff unable to function in an offered USPS position as a city carrier, *see id*. at 269, a conclusion consistent with that of the administrative law judge that he was incapable of returning to past relevant work, *see* Finding 6, *id*. at 16.

In short, the administrative law judge considered the 2003 Green opinion, supplied good reasons for its rejection, and chose to credit, with a supportable modification, conflicting evidence in the form of the Stucki RFC opinion. No more was required.

## II. Conclusion

For the foregoing reasons, I recommend that the decision of the commissioner be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which <u>de novo</u> review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

---

[6] As the administrative law judge observed, *see* Record at 15, in an Adult Function Report dated June 25, 2007, the plaintiff described his activities as including light household or yard work, home repairs, going for short walks, weekly clothing and grocery shopping, and watching television, *see id*. at 165, 167-68. As she also noted, *see id*. at 15, hearing testimony and treatment records reflected that he was, *inter alia*, working in the yard with his son, attending sporting events, rebounding basketballs for his son, driving, and walking up to a mile or two, *see id*. at 41-42, 48-50, 56, 59, 342, 346.

11

***Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.***

Dated this 31st day of March, 2011.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge